**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

---

**EDITH YARNELI SANTAMARIA-MEJIA**,

Petitioner,

v.

**ICE, et al.**,

Respondents.

No. 26-cv-07437

**MEMORANDUM ORDER**

---

**O'HEARN, District Judge.**

**THIS MATTER** comes before the Court on the Amended Petition for Writ of Habeas Corpus, (ECF No. 10). The Court granted the Amended Petition and ordered Petitioner released on July 9, 2026. (ECF No. 15). This memorandum order further sets forth the reasons for the Court's decision.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner Edith Yarneli Santamaria-Mejia is a native and citizen of Honduras who has lived in the United States for more than twenty years. She is married to a United States citizen and has several children who are also U.S. citizens. (Gov't Resp., ECF No. 9 at 2). She has no criminal history. (*Id.*). Petitioner alleges that she is her family's primary caregiver and that her husband suffers from cirrhosis and depends upon her for assistance with his medical care and the care of their children. (Am. Pet., ECF No. 10 ¶ 2).

According to Respondents, Petitioner entered the United States near Roma, Texas, on or about May 27, 2004. (Gov't Resp., ECF No. 9 at 2). Immigration officials apprehended Petitioner that same day and issued her a Notice to Appear at a hearing on June 29, 2004, charging her as

inadmissible. (*Id.*; Gov't Ex. C). She was released on her own recognizance. (Gov't Resp., ECF No. 9 at 2). On September 27, 2004, an Immigration Judge ordered Petitioner removed from the United States *in absentia*. (*Id.*). Petitioner remained in the United States following entry of the removal order and Respondents have identified no efforts to remove her at any time thereafter.

On April 9, 2021, Petitioner filed a Form I-130 Petition for Alien Relative based upon her marriage to a U.S. citizen. (*Id.*). That petition remains pending. (*Id.*).

Petitioner also requested on May 29, 2024, that immigration authorities exercise prosecutorial discretion by reopening and dismissing her removal proceedings. (*Id.*). Immigration and Customs Enforcement ("ICE") requested additional documentation in October 2024, and Respondents represent that this request also remains pending. (*Id.*).

On June 17, 2026, Petitioner and her husband appeared for an interview concerning the I-130 petition. (*Id.*). ICE officers arrested Petitioner at the interview pursuant to the outstanding removal order and detained her. (*Id.*). From that date until this Court ordered release, Petitioner remained in ICE custody and, apart from a brief period of hospitalization, was detained at the Delaney Hall Detention Facility in Newark, New Jersey for a total of twenty-two days. (Answer ¶¶ 5, 7).

Petitioner's sister-in-law, Cristina Mateo Silven, filed a habeas petition in this Court on June 22, 2026, seeking to act as Petitioner's next friend. (ECF No. 1). But because Ms. Silven is not an attorney, she could not litigate the case on Petitioner's behalf. (*See* ECF No. 4). The Court therefore appointed counsel to represent Petitioner. (*Id.*). Thereafter, Petitioner retained counsel and filed a motion for leave to amend her Petition on July 3, 2026.[1] (ECF No. 6).

---

[1] The amended petition appears to have been erroneously docketed as a new case, which Petitioner's counsel voluntarily dismissed upon realizing the action was already pending before this Court. *Santamaria Mejia v. Blanche*, No. 26-7859 (D.N.J. filed June 28, 2026), ECF No. 4.

The Amended Petition asserts that denial of medication, resulting hospitalization, restrictions on Petitioner's communications with counsel, and conditions at Delaney Hall constitute unconstitutional punishment and deliberate indifference in violation of the Due Process Clause. (ECF No. 10). Because the Amended Petition also alleged that Petitioner was subject to a final removal order but that her removal could not be effected in the reasonably foreseeable future, the Court construed the Amended Petition as also alleging unlawful detention under 8 U.S.C. § 1231 and *Zadvydas v. Davis*, 533 U.S. 678 (2001). (ECF No. 7 at 1 n.1). On July 4, 2026, the Court granted leave to amend and directed Respondents to file an expedited answer. (ECF No. 7). Among other things, the Court's Order directed Respondents to identify all efforts made since the date of the final order of removal and the date of Petitioner's detention to effectuate her removal and the results thereof. (*Id.*). Respondents filed their expedited answer on July 6, 2026. (ECF No. 9).

Respondents argue that Petitioner's detention is lawful under § 1231(a)(6), that any *Zadvydas* challenge is premature, and that claims of inadequate medical care are generally not cognizable in habeas proceedings absent extreme circumstances. (Gov't Resp., ECF No. 9 at 3–8 (citing *Hope v. Warden*, 972 F.3d 310, 324–25 (3d Cir. 2020))). Respondents further argue that, even if her removal order was vacated, Petitioner would be lawfully detained without bond under 8 U.S.C. § 1225(b). (*Id.*). Petitioner filed a letter reply in which she argued that her conditions-of-confinement claim is cognizable in habeas and that if her removal proceedings are reopened, her detention should be governed by 8 U.S.C. § 1226(a), not § 1225(b)(2), because she was released on her own recognizance more than twenty years ago and therefore would be entitled to an individualized bond hearing. (ECF No. 13).

Thereafter, the parties filed a joint letter on July 9, 2026, advising the Court that Petitioner

had filed a motion to reopen and rescind her *in absentia* removal order, together with a request for a stay of removal. (ECF No. 14). That filing automatically stays her removal while the motion is pending, meaning ICE cannot remove her during that period and, if reopening is granted, during the reopened proceedings. (*Id.*). The parties agreed that this "materially affects the likelihood of removal in the reasonably foreseeable future." *Id.* Upon receipt of this letter, the Court ordered Petitioner's immediate release and enjoined Respondents from re-detaining her absent changed circumstances and pending this Order. (ECF No. 15).

## II.      JURISDICTION AND LEGAL STANDARD

District courts have jurisdiction under 28 U.S.C. § 2241 to hear claims that an immigration detainee is "in custody in violation of the Constitution or laws or treaties of the United States." § 2241(c)(3); *see also Zadvydas*, 533 U.S. at 687; *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 439 (3d Cir. 2021); *Tuser E. v. Rodriguez*, 370 F. Supp. 3d 435, 440 (D.N.J. 2019). Petitioners have the burden to demonstrate that their detention violates the Constitution or federal law. *See, e.g.*, § 2241(c)(3); *Zumba v. Bondi*, No. 25-14626, 2025 WL 2753496, at *4 (D.N.J. Sept. 26, 2025); *Sarkisov v. Underwood*, No. 24-88, 2025 WL 1640826, at *1 (W.D. Pa. May 5, 2025).

As Petitioner was detained in New Jersey at the time she filed her Petition and challenges the legality of that detention on federal constitutional and statutory grounds, this Court has jurisdiction to consider her claims. Respondents do not assert that exhaustion is required. Finally, no statute divests this Court of jurisdiction because Petitioner does "not seek review of the Attorney General's exercise of discretion; rather, [she] challenge[s] the extent of the Attorney General's authority under the post-removal-period detention statute." *Zadvydas*, 533 U.S. at 688.

### III.    DISCUSSION

Respondents may not indefinitely detain Petitioner under 8 U.S.C. § 1231 merely because a final removal order exists. Petitioner's removal order was entered more than twenty years ago, the Government has identified no affirmative steps taken to remove Petitioner at any time since, and, in any event, Respondents acknowledge that her newly filed motion to reopen her proceedings automatically stays removal. As explained below, because removal is not reasonably foreseeable, her continued detention is no longer authorized by § 1231. And if her removal order is vacated, any further detention must be under § 1226(a), which affords her an opportunity to seek bond.[2]

Once a noncitizen is ordered removed, the Department of Homeland Security must remove them within ninety days. § 1231(a)(1)(A). This "removal period" begins on the latest of: "(1) the date the order of removal becomes 'administratively final,' (2) the date of the final order of any court that entered a stay of removal, or (3) the date on which the alien is released from non-immigration detention or confinement." *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021) (citing § 1231(a)(1)(B)). Where, as here, a removal order is entered *in absentia*, it becomes administratively final immediately upon entry, 8 C.F.R. § 1241.1(e), and thus the removal period begins on that date.

Detention during the removal period is mandatory. § 1231(a)(2). But the statute also permits the continued detention of certain noncitizens beyond that period, including those deemed inadmissible under 8 U.S.C. § 1182. § 1231(a)(6). Although the statute itself does not limit the length of post-removal-period detention, the Supreme Court in *Zadvydas* construed § 1231(a)(6) to authorize detention only for the period reasonably necessary to accomplish removal and

---

[2] Because the Court finds that her detention is not authorized by § 1231, the Court need not and does not reach Petitioner's conditions-of-confinement claim.

identified six months—including the 90-day mandatory detention period—as a presumptively reasonable period of detention. 533 U.S. at 701. After that period, if the detainee provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the Government to rebut that showing with sufficient evidence. *Id.*

Here, Petitioner is subject to a final order of removal that was entered *in absentia* on September 27, 2004. Thus, the order became administratively final—and the removal period began—on that date. Nevertheless, Respondents argue that, even if the removal period ended long ago, the six-month presumptively reasonable period for detention recognized in *Zadvydas* began only when ICE detained her on June 17, 2026. Respondents rely on several district court decisions adopting this approach. *See Callender v. Shanahan*, 281 F. Supp. 3d 428, 435–36 (S.D.N.Y. 2017); *Marroquin-Marroquin v. Margolin*, No. 25-19081, 2026 WL 184552, at *2–3 (D.N.J. Jan. 23, 2026); *Rodriguez-Guardado v. Smith*, 271 F. Supp. 3d 331, 335 n.8 (D. Mass. 2017); *Chun Yat Ma v. Asher*, No. 11-1973, 2012 WL 1432229, at *3 (W.D. Wash. Apr. 25, 2012). Thus, because Petitioner has not yet been detained for six months, they argue her *Zadvydas* claim is premature, or, alternatively, that she has not met her burden of providing good reason that there is no significant likelihood of removal in the reasonably foreseeable future. (Gov't Resp., ECF No. 9 at 3–6).

As an initial matter, the Court notes that a growing number of courts have either rejected or at least questioned Respondents' argument that the six-month period during which detention is presumptively reasonable begins only when the noncitizen is detained—even if the initial detention occurs decades after the final removal order is entered. *See, e.g.*, *Khoury v. Garite*, No. 25-00577, 2026 WL 1179822, at *6–8 (W.D. Tex. Apr. 21, 2026); *Zavvar v. Scott*, No. 25-2104, 2025 WL 2592543, at *4 (D. Md. Sept. 8, 2025); *Cruz Medina v. Noem*, 794 F. Supp. 3d 365, 377–

79 (D. Md. 2025); *Tadros v. Noem*, No. 25-4108, 2025 WL 1678501, at *3 (D.N.J. June 13, 2025); *Farez-Espinoza v. Chertoff*, 600 F. Supp. 2d 488, 499 (S.D.N.Y. 2009). In *Khoury*, for example, the court noted that *Zadvydas* assumed a continuous period of detention after the final order of removal. 2026 WL 1179822, at *6. After conducting a thorough analysis of *Zadvydas* and the underlying legislative history on which the Supreme Court relied, the court in *Khoury* was unable to "discern any logic in taking a presumption grounded in those six months post-final removal order and applying it decades later." *Id.* at *8. Thus, the court concluded "that *Zadvydas*'s six-month presumptively reasonable period runs continuously from the date on which an alien's removal order becomes final—irrespective of whether an alien spends all or some of that six-month period in detention." *Id.* Similarly, in *Zavvar*, the court noted that *Zadvydas* sought to balance the noncitizen's liberty interest with the Government's need for a reasonable period of time to effectuate removal. 2025 WL 2592543, at *4. Accordingly, because the Government can take steps to effectuate removal, such as securing approval from a foreign country or obtaining a travel document, even if the noncitizen is not actually detained there is "at a minimum, a reasonable argument that the six-month period runs continuously from the beginning of the removal period, even if the noncitizen is not detained throughout that period." *Id.*

The Court finds the reasoning of these courts to be persuasive. To be sure, rejecting Respondents' position does not mean that the Government can never detain and remove a noncitizen like Petitioner more than six months after a final removal order is entered. It means only that any presumption of reasonableness has ended, and the Government "bears the burden of proof if the alien can offer any legitimate argument as to why there is no significant likelihood of removal." *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 397 (D.N.J. 2025) (citation omitted). When the Government leaves a removal order unenforced for decades while a noncitizen builds a

7

life, family, and community ties in the United States, allocating the burden in this manner is consistent with the rationale of *Zadvydas* and the underlying principles of due process. This is particularly true in cases such as this one, where the Government has long known of the specific whereabouts of the Petitioner yet failed to take any action whatsoever to remove her.

Thus, this Court recognizes that there is at least substantial doubt as to whether *Zadvydas*'s six-month presumption applies in cases such as this where the ninety-day mandatory detention period has long expired and there has been no prior detention. But the Court need not resolve this question today to decide this case. Even assuming, as Respondents assert, that the six-month presumptively reasonable period of detention began when Petitioner was detained on June 17, 2026, this presumption can be rebutted and does not foreclose a *Zadvydas* claim. *See, e.g.*, *Munoz-Saucedo*, 789 F. Supp. 3d at 397.

The six-month presumption was adopted only to provide a "guide" to courts to aid in their duty to "ask whether the detention in question exceeds a period reasonably necessary to secure removal" based on the "particular circumstances" of the case. *Zadvydas*, 533 U.S. at 699, 701. In other words, as this Court has previously explained, if removal is not reasonably foreseeable at any point during the post-removal-period detention, "*Zadvydas* does not countenance confinement for confinement's sake." *W.A.C. v. Rokosky*, No. 26-03419, 2026 WL 1383150, at *8 (D.N.J. May 18, 2026). To rebut the presumption, "the petitioner must claim and *prove*, that [her] removal is not reasonably foreseeable." *Munoz-Saucedo*, 789 F. Supp. 3d at 397. In other words, the "presumption scheme merely suggests that the burden the detainee must carry within the first six months ... is a heavier one than after six months has elapsed." *Id.* (citation omitted). As explained below, Petitioner has met this heavier burden.

Respondents have identified no efforts made to effectuate Petitioner's removal since her

8

removal order became final in 2004. As noted above, she subsequently filed an I-130 petition and a request for prosecutorial discretion in 2021 and 2024, respectively, which remain pending.[3] The Government requested additional information from Petitioner yet still made no efforts to remove her. These facts are undisputed. And even now, after her sudden detention, Respondents have not identified any steps taken to effectuate her removal, such as efforts to procure a travel document or secure foreign country approval. Their silence is telling.

Furthermore, as noted above, Petitioner has now filed a motion to reopen and rescind her removal order which has resulted in an automatic stay of removal that remains in effect. (ECF No. 14). Respondents concede that they "will not be able to remove Petitioner from the United States during the pendency of the motion to reopen proceedings and, if granted, during the pendency of any reopened removal proceedings." (*Id.*). They further agree with Petitioner that this "materially affects the likelihood of removal in the reasonably foreseeable future." (*Id.*). Indeed, given the immense congestion in the immigration courts, these proceedings could take many months to resolve if not longer.

In short, if the presumption of reasonableness recognized in *Zadvydas* has ended, the Court would easily find that Petitioner has shown good reason to believe that there is not a significant likelihood of removal in the reasonably foreseeable future, thus shifting the burden to the Government, which has woefully failed to present any evidence otherwise. But even assuming that the presumption exists and the burden of proof remains with Petitioner, she has carried her burden here for the reasons set forth above. *See Palma v. Soto,* No. 26-5679, 2026 WL 1723864 (D.N.J.

---

[3] Thus, to the extent Respondents argue that the removal period was extended because Petitioner conspired or acted to prevent her removal by failing to appear for her initial hearing in 2004, § 1231(a)(1)(C), Respondents have known her specific whereabouts and thus were capable of at least attempting to remove her for at least five years.

June 15, 2026) (holding that removal was not reasonably foreseeable where removal was stayed pending motion to reopen proceedings).

Finally, if Petitioner's motion is granted and her removal order vacated, the Court agrees with Petitioner that she may be re-detained only under § 1226(a), not, as Respondents argue, under § 1225(b). Respondents admit that they rely on the same statutory arguments that this Court and numerous others have repeatedly rejected. (ECF No. 9 at 7). Because Petitioner was apprehended in the interior of the United States after residing here for more than two decades, § 1225(b) is inapplicable to her and detention during any removal proceedings must be pursuant to § 1226(a), which requires the opportunity to seek bond. *See, e.g.*, *Bethancourt Soto v. Soto*, 807 F. Supp. 3d 397, 408 (D.N.J. 2025).

In sum, § 1231 does not permit Petitioner's continued detention where removal is not reasonably foreseeable, and the Government may not avoid § 1226(a)'s bond procedures if her removal order is vacated.

*****

For the foregoing reasons,

**IT IS HEREBY** on this 13th day of July, 2026,

**ORDERED** that the Amended Petition for Writ of Habeas Corpus is **GRANTED**; and it is further

**ORDERED** that Respondents are **ENJOINED** from re-detaining Petitioner under 8 U.S.C. § 1231 absent changed circumstances; and it is further

**ORDERED** that if Petitioner's final removal order is vacated and Respondents thereafter seek to re-detain Petitioner under § 1226(a), they shall afford her a prompt bond hearing before an Immigration Judge as required by that statute and its implementing regulations; and it is further

**ORDERED** that Respondents are **PERMANENTLY ENJOINED** from detaining

10

Petitioner under § 1225(b), which the Court has found to be inapplicable to her; and it is finally

ORDERED that this Court will retain jurisdiction and Petitioner may move to reopen these

proceedings without filing a new habeas petition in the event of re-detention in violation of this

Order.

**CHRISTINE P. O'HEARN**
**United States District Judge**